# EXHIBIT A

IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE

CIVIL ACTION NO. 2016-416

Plaintiff: James Mullin
Plaintiff: Shannon Mullin & Amanda Brooke Mullin

vs.

Defendant: Rolling Hills Hospital
Defendant: 2014 Quail Hollow Circle
Defendant: Franklin, TN. 37067

Service By:
☒ Sheriff
☐ Attorney
☐ Sec. Of State
☐ Comm. Of Insurance

To the above named Defendant:

You are hereby summoned and required to serve upon James Mullin plaintiff's attorney, whose address is 4170 Cowan Rd, Cookeville, TN 38506, an answer to the complaint which is herewith served upon you within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Witnessed and issued, Debbie McMillan Barrett, Circuit Clerk for said Court at office this 26 day of August, 20 16.

_____
Circuit Court Clerk

**NOTICE:**

To the defendant(s): Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the terms you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. Mail list, including docket number, to: Circuit Court Clerk, 135 4th Ave South, Franklin, TN 37064.

| Circuit Court Williamson County, Tennessee | COMPLAINT | Case Number |
|---|---|---|
| James Mullin vs. Rolling Hills Hospital | | 2016-416 |
| Shannon Mullin | | |
| Amanda Brooke Mullin | | |
| Plaintiff(s) | | Defendant(s) |

| Plaintiff's Name | Address | City | State | Zip |
|---|---|---|---|---|
| James Ira Mullin | | | | |
| Shannon Menece Mullin | 4170 Cowan Rd. | Cookeville | TN | 38506 |
| Amanda Brooke Mullin | | | | |

| Defendant's Name | Address | City | State | Zip |
|---|---|---|---|---|
| Rolling Hills Hospital | 2014 Quail Hollow Circle | Franklin | TN | 37067 |

CLAIM [*both facts and the legal basis for the claim*]:

On August 26, Year? 2015 (next page) Amanda Brooke Mullin suffered an emotional distress triggered by a scheduled visit to her regular counselor, requiring the intervention of a crisis counselor, who was dispatched to her home that evening by Youth Villages Specialized Crisis Counselors. After a lengthy session with Amanda, that counselor recommended a home safety plan and did not feel hospitalization was necessary at that point. However, Amanda's regular counselor had made it clear that she believed hospitalization would benefit Amanda, so Amanda, believing her regular counselor may be right, and believing that a hospital stay would benefit her, requested the Youth Villages counselor find her a bed in a psychiatric treatment facility, and he obliged. Finding a bed available at Rolling Hills Hospital in Franklin, TN., the Youth Villages counselor advised the hospital that we were coming to bring Amanda for voluntary admission. At that point, Amanda packed some things to take with her, and James Mullin and Shannon Mullin (Amanda's

ORIGINAL

Father and Mother) drove her approximately 90 miles to Rolling Hills Hospital. The staff welcomed us and brought admission paperwork, which she encouraged Amanda to sign herself, explaining that because she was 16 years of age she could sign for and be responsible for her own health care. Amanda did as she was asked with some trepidation, as this was the first time she had ever signed for her own care. This is how Amanda Mullin came to be a self-admitted patient at Rolling Hills Hospital at 1:40 AM, August 27th, 2015. James and Shannon Mullin hugged Amanda goodbye and returned home to Cookeville, TN.

Later in the day on August 27th, Amanda called home and spoke to her parents, crying and pleading to come home, stating she had made a mistake and that hospitalization was not going to benefit her in any way. James Mullin advised his daughter that she had not even been there for 12 hours yet and that she should give them more of a chance to show her how they could help. It was exceedingly difficult for Mr. Mullin to stick to this decision, as Amanda was inconsolable. Mr. Mullin advised his daughter that if she still felt that way the next day, because she was self-admitted, she could go ahead and ask for release and her parents would come to the hospital and pick her up.

The following day, August 28th, at about 2:00 PM, Mr. Mullin was on the phone with his daughter Amanda, who was in Rolling Hills Hospital, and she re-iterated to her father that they were not helping her and that she wanted to come home. Mr. Mullin advised Amanda to tell a nurse, which she did at that time, speaking to a nurse named Catherine and requesting the paperwork she needed for release. Mr. Mullin called Rolling Hills Hospital at 4:00 PM to get the status of his daughter's request for release. He spoke to a Dr. Hess, who explained that she was Amanda's psychiatrist, and further told Mr. Mullin that she was not aware of Amanda's request for release, and did not understand why her nurse had not informed her. At 4:15 PM she directed nurse Catherine to get Amanda out of a group therapy session and "immediately" get release paperwork and assist Amanda in filling it out. Mr. Mullin was advised that he would be given a

call when Amanda was ready to be picked up. At 5:00 PM Mr. Mullin had not received a telephone call from the hospital, and called the hospital back to find out what was going on. The person who answered the telephone at Rolling Hills Hospital claimed to not know anything about what was going on and had no idea Amanda was being released. Mr. Mullin advised this person that he was leaving Cookeville right then and to have Amanda ready to leave in 2 hours. The person on the phone said she would tell the Doctor and hung up the phone rudely, without another word. At this time, Mr. and Mrs. Mullin left their home in Cookeville, TN. To retrieve their daughter Amanda from Rolling Hills Hospital. Rolling Hills Hospital had all contact information for the Mullin family, including the cellular phone numbers for Mr. and Mrs. Mullin, which were not off their person or out of service at any time during the trip to Rolling Hills Hospital. Rolling Hills Hospital made no attempt to contact Mr. or Mrs. Mullin for the two hours it took them to arrive at the hospital. Upon arriving at the hospital, Mr. and Mrs. Mullin went in the night entry and asked for Amanda so they could take her home. The night desk person informed Mr. Mullin that he could not pick his daughter up. Mr. Mullin asked why not, and was told that Amanda was 6404. When Mr. Mullin asked what was meant by that, he was informed that his daughter had been committed to the hospital and could not leave until they released her, and that was not going to happen on that night. Mr. Mullin became angry and left, smacking the speaker box in the entryway with the paperwork in his hand.

At this point, Mr. and Mrs. Mullin went to the Franklin Police Department and asked for their help. An officer spoke to Mr. and Mrs Mullin at length and accompanied them back to the hospital. The officer tried on different occasions from that night into the following days to assist Mr. and Mrs. Mullin in obtaining information from the hospital regarding Amanda's commitment, the actual documentation or copies thereof pertaining to her commitment, and copies of her medical records. That night and the days that followed, Rolling Hills Hospital refused to provide medical records or any records pertaining to her commitment to Mr. or Mrs

Mullin, to Amanda Mullin, or to the Franklin Police Officer on their behalf. Amanda Mullin was present and willing to sign for the medical records she had a legal right to copies of and was told that she nor her parents could have access to them and there was no way to get access.

Over the course of that weekend, August 29th and August 30th, Mr. Mullin made dozens of phone calls, to anyone he could think of to get help, but no help was to be found. Mr. and Mrs. Mullin attended the very brief visiting hours allotted to their patients to see Amanda, stayed in the hotel across the street to be close to their daughter, and bought some books for Amanda to console her while she was being held. Sunday, August 30th, in the afternoon following visiting hours, Mr. Mullin asked to speak to someone in charge. After a wait, Mr. Mullin had a lengthy conversation with a man who presented himself as someone in charge. This man informed Mr. Mullin that his daughter was still suicidal, that suicidal could not be cured in 24 hours, and that she may "run into traffic" if released too soon. He further informed Mr. Mullin that it was highly unlikely that Amanda would be released prior to the following Thursday, coincidentally the same date set for her hearing on the 6404 commitment. Mrs. Mullin asked if there was any way Mr. Mullin and she could see their daughter before then, as the hospital does not allow any visitors through the week. Mr. and Mrs. Mullin were offered a "Parent Meeting", also attended by a counselor, and that was scheduled for Monday afternoon, August 31st.

On Monday morning about 8:30 AM Mr. Mullin contacted Blue Care, the Mullin family's Tenn Care provider. He told the person there the entire story, explaining that Amanda had not threatened suicide nor harm to another, and was being held against her will without probable cause. The person at Blue Care agreed to file an emergency appeal to DENY further payment for services at Rolling Hills Hospital, as the initial approval was for 4 days, and the hospital would have to request approval for any additional days of service on that very day, Monday, August 31st, 2015. Later that morning, Mrs. Mullin got a call from Rolling Hills Hospital and was told that Amanda "had a very good day" and had made a remarkable recovery, to the extent that her

parents would be allowed to take her home after the parent meeting scheduled for that afternoon. Around midday that same day, Mrs. Mullin received another call on her cell phone from a nurse at Rolling Hills Hospital, who said the hospital had decided that Amanda could go ahead and leave. Mr. and Mrs. Mullin drove from the hotel room to the hospital and went in and told the staff they were there to pick up Amanda Mullin. Shortly thereafter, the hospital produced Amanda and her possessions, and sent her home summarily, with no team/parent meeting, no safety plan, and no follow-up. Mr. Mullin and Amanda Mullin made another request for Amanda's medical records from the hospital, and were told again that they could not have them.

Plaintiffs do contend the following:

Defendant denied on multiple occasions, access to Amanda Mullin's medical records at their facility to Amanda Mullin, 16 years of age at the time, and also denied said access to James Mullin, Amanda's father. Plaintiffs contend defendant denied access to Amanda's medical records to conceal from Amanda and James Mullin facts about her stay at Rolling Hills Hospital that would reveal wrongdoing and bad faith by the hospital thereby exposing the hospital to liability for its actions. Denying access to a patient of their medical records is a violation of Tennessee Code **33-3-112**, and Federal Code §164.524. To this day the Mullin family has not obtained access to or copies of Amanda's medical records at Rolling Hills Hospital.

Defendant did detain Amanda Brooke Mullin against her will from 7:00 PM Friday, August 28th until 12:30 PM Monday, August 31st. Rolling Hills Hospital did not meet the burden of Tennessee code **33-6-401**, which requires the person poses an immediate substantial likelihood of serious harm under § 33-6-501 because of the mental illness or serious emotional disturbance as a prerequisite of detention. Amanda Mullin did not meet the definition of Tennessee code 33-6-501, which defines substantial likelihood of serious harm as threatening or attempting suicide or serious bodily harm, or threatening or attempting homicide or other violent behavior. At no time during her stay at Rolling Hills Hospital did Amanda threaten or attempt suicide, threaten or attempt homicide, or threaten violent behavior or behave violently, and therefore could not have been observed doing so. Because of this, her detention was without probable cause and illegal, constituting false imprisonment, a violation of Tennessee code **33-3-101, Tennessee code 39-13-302, Federal code § 11.404, and a violation of Amanda's Constitutional 5th Amendment right not to be deprived of liberty without due process.** Also, the person who filed court documents to secure detention of Amanda for Rolling Hills Hospital is in violation of Tennessee code 33-3-902, which makes providing false information on said documents a class c misdemeanor.

Plaintiffs contend that Amanda's detention was in bad faith by Rolling Hills Hospital, as the detention was perpetrated for the sole purpose of expanding the hospital's profit by preventing Amanda from leaving the hospital before they could bill Tenn Care Blue Care for the remaining two days of the pre-approved four day stay. Simply put, the hospital was much more concerned with the money Amanda could bring them than they were with Amanda's health, as evidenced by the summary and unconcerned release of Amanda within hours of finding out Blue Care was not paying for any more days in their facility for Amanda. Plaintiffs further contend that Rolling Hills Hospital's awareness that Amanda's payment was provided by Tenn Care gave them insight into the Mullin family's Socioeconomic status, making the Mullin family a target for just such a bad faith action because the Mullin family clearly does not have the money to hire an attorney to make Rolling Hills Hospital answer for their liability in the bad faith action. When Rolling Hills Hospital filed emergency detention documents with the court for the sole purpose of exploiting Amanda Mullin and her family to perpetrate fraud against the Tenn Care system and expand their profit margin, they committed the act of Abuse of Process with Malicious Intent.

On one occasion while in Rolling Hills Hospital, Amanda left her private journal unattended in a public area, and later observed the journal on a staff member's computer, and observed copies had been made of the pages inside. On another occasion, a staff member demanded Amanda hand her Amanda's private journal. When Amanda objected, the staff member pulled it from Amanda's hand over Amanda's objections, and proceeded to make copies of the pages inside. On voluntary admission to Rolling Hills Hospital, Amanda's pillow, blanket, and stuffed animal were forced to be put in a locker and not available to Amanda during her stay, over Amanda's objections. Amanda's personal rights are protected by Tennessee code **33-3-101**. This act was a violation of Amanda's Constitutional 4th Amendment Rights, specifically an unwarranted seizure and search of Amanda's personal papers, and of her personal possessions.

On Amanda's first day in Rolling Hills Hospital, she did have a panic attack due to the stresses associated with being hospitalized and being away from home without access to friends or family. The staff member near her impatiently grabbed her arm and began pulling Amanda up and towards the cafeteria, telling Amanda that she did not have time for this, she had to get to the cafeteria. Dr. Hess later commented to Shannon Mullin on the phone that Amanda "threw herself in the floor and acted like a small child". Tennessee code 33-1-203 calls for service recipients and families to be treated with "dignity and respect" and protect service recipients from abuse, neglect, and exploitation. Plaintiffs contend Rolling Hills Hospital falls well short of this directive.

Tennessee code **33-2-602** states "Every licensee under this title shall have a clear conflict resolution procedure, including an appeal process, that complies with the department's rules and shall communicate the procedure to each service recipient and family involved in the service. " Rolling Hills Hospital never informed Amanda Mullin or her family of any conflict resolution procedure or appeal process, and after the family's experience with Rolling Hills Hospital, plaintiffs doubt such a process exists in that hospital.

Tennessee code 33-3-801 protects the mental patients right to file for writ of habeas corpus. Rolling Hills Hospital was informed of Amanda's desire to leave the hospital at 2:00 PM on Friday, August 28th, 2015. By telling James Mullin by phone that the paperwork for release would be prepared and not informing the Mullin family that Amanda would be detained, and knowing that the Williamson County courts are closed on Weekends, Rolling Hills Hospital effectively prevented a writ of Habeas Corpus from being filed on Amanda's behalf until the following Monday, sufficient to bill Blue Care for the remaining two days that were pre-approved.

Tennessee code 33-4-101 gives the chief officer of the hospital the right to make reasonable rules regarding visitors, visiting hours, and the use of communication devices. During Amanda's stay at Rolling Hills Hospital, her family members were allowed to see her only on Saturday and Sunday. Visits were group events, with all visitors and all patients in one large room simultaneously with no privacy. Visits were limited to two visitors at a time, with a total of 45 minutes to visit on each day. Amanda's father got 22.5 minutes of visitation on Sunday, as another family member wanted to see Amanda, so Amanda's father gave her half of his time. Amanda was allowed to hug her family on arrival to visitation, and again on departure. Other than that, no touching was tolerated during visitation. Amanda's boyfriend wanted to come see her, Amanda's father was informed by the staff that that visit would not be allowed. Plaintiffs contend that these policies are in contrast to the spirit of the law, and indeed would be very strict in a prison setting, let alone in a hospital.

Tennessee code 33-6-404 Requires that if a licensed physician, psychologist, or designated professional takes a person into custody under 33-6-402 they are to immediately examine the person and decide whether the person is subject to admission to a hospital or treatment resource under 33-6-403. Amanda was given AMA (release from hospital) paperwork at 4:15 PM on Friday, August 28th, 2015. Subsequent to filling out that paperwork, Amanda was neither examined nor informed that she was detained. The family was first informed of Amanda's detention by a night staffer in the hospital at 7:00 PM that same Friday evening.

Tennessee code 33-6-414 requires that if a judge is not available, the admitting facility may hold the defendant no more than 24 hours, if all other provisions of this part have been complied with. The fact that Rolling Hills Hospital did not comply with all the provisions of emergency involuntary admission notwithstanding, by this standard Amanda should have been released no later than 7:00 PM Saturday, August 29th, 2015, and she was not.

Tennessee code 33-6-705 requires the discharge of a person no longer meeting the standards of admission. Since the standards of admission were never met in the first place, Rolling Hills Hospital was in violation of this code the entirety of Amanda's detention.

Plaintiffs contend that the defendant, through cavalier defiance and disregard of the laws and regulations that govern the defendants industry, and through acts of bad faith and abuse of process designed to add to profits by defrauding payers for services and exploiting patients with limited mental constitutions and families at a financial disadvantage, by these nefarious acts and others, have caused considerable injury to the patient they were commissioned to help and protect, and to her family. Amanda suffered 65 hours of unlawful detainment against her will, by a hospital she went to for help, putting her trust in the mental health care system. During that 65 hours, James Mullin suffered anger, anxiety, frustration, helplessness, sleeplessness, and stress associated with an uncontrollable urge to protect his daughter and retrieve her from her captors, and the sadness of watching his wife have multiple emotional breaks, crying and sobbing uncontrollably. Shannon Mullin suffered emotional breaks, crying, fear, and the anxiety of being separated from her child against her will.

Prior to and subsequent to this event, Amanda Mullin has a real need for ongoing psychiatric care for her anxiety and other mental issues. Nearly a year has passed and Amanda still has nightmares of being trapped in Rolling Hills Hospital. She is emotionally scarred by her experience at Rolling Hills Hospital and now harbors a deep distrust of the mental healthcare system. Rolling Hills Hospital did more to exacerbate Amanda's fears and anxieties than they did to alleviate them. Amanda will carry with her a real fear of the very hospitals she may well need later in life, forever, because of the damage done by Rolling Hills Hospital.

AMOUNT OF CLAIM, IF KNOWN: ___$31,540,577.00___  [*not including court costs*]

DATE CLAIM AROSE: ___August 27th, 2015___

RELIEF THAT I SEEK FROM THE COURT: Money, Punitive Damages

Dated: ___August 26th___, 2016

_____
Signature of Plaintiffs

Telephone: 931-432-2603    Cell: 931-284-2269    E-Mail: daddyoh52@yahoo.com